UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MALCOLM D. RICHARDSON, | ) | NO. CV 09-4451-CT |
| Plaintiff, | ) ) ) | OPINION AND ORDER |
| v. | ) ) | |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | ) ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

### SUMMARY OF PROCEEDINGS

On June 24, 2009, Malcolm D. Richardson ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). On September 29, 2009, plaintiff filed a memorandum of points and authorities in support of the complaint. On November 30, 3009, the Commissioner filed an opposition.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1. Proceedings

On April 6, 2009, plaintiff filed applications for disability insurance benefits and Supplemental Security Income ("SSI"), (TR 140-151),[1] alleging disability since August 1, 2005, due to a herniated disc and seizures, (TR 157-63.) The applications were denied initially and upon reconsideration. (TR 40-44, 45-50.)

On March 16, 2007, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 51.) On June 3, 2008, plaintiff, represented by a non-attorney, appeared and testified before an ALJ. (TR 258-287). The ALJ also considered vocational expert ("VE") and medical expert ("ME") testimony.

On December 17, 2008, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because he remains able to perform work at all exertional levels, subject to non-exertional limitations precluding him from climbing and driving, and from exposure to heights and heavy machinery, and finding that he thus was not eligible for benefits. (TR 7-15.) On January 28, 2009, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 16-19.) On April 21, 2009, the request was denied. (TR 1-3.) Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

Plaintiff subsequently sought judicial review in this court.

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

2. Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in the case.

PLAINTIFF'S CONTENTIONS

Plaintiff essentially contends the ALJ:

1. Committed reversible error in assessing plaintiff's residual functional capacity ("RFC"); and,

2. Failed to provide legally sufficient reasons to reject plaintiff's testimony.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

//
//
//

3

DISCUSSION

1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the

person is unable to perform other work. 20 C.F.R. §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2. Issues

    A.    RFC Assessment (Issue # 1)

Plaintiff first argues that the ALJ's RFC assessment is not supported by substantial evidence because it does not include limitations in his mental functioning that were opined by consultative examining psychiatrist Ernest Banger III, M.D., and state agency reviewing psychiatrist N. Haroun, M.D. (See TR 230-31, 232-42.)

The mere fact that a non-exertional limitation is alleged does not automatically require its inclusion in the RFC, however. The ALJ must account for non-exertional limitations within the RFC only if they "significantly limit the range of work permitted by [plaintiff's] exertional limitations." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576-77 (9th Cir. 1988) (citations omitted). Multiple moderate mental limitations alone do not significantly limit a person's ability to perform work. See Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (holding that multiple mild and moderate depression-related limitations did not significantly limit the plaintiff's ability to do work beyond the exertional limitations).

Here, the ALJ concluded the opined limitations do not significantly limit the range of work plaintiff can perform. (See TR 10.) This conclusion is based on substantial evidence of record; specifically, it is adopted from Dr. Banger's opinion that plaintiff's mental impairments are so mild that the "appropriate professional would best address any

restrictions based strictly on medical findings." (TR 231.)[2]

Accordingly, there is no material legal error here.

### B. Plaintiff's Credibility

Next, plaintiff contends that the ALJ failed to properly assess his credibility. Specifically, he claims the ALJ gave too much weight to the fact that the medical record does not entirely support his subjective statements.

In conducting an evaluation of plaintiff's credibility, the ALJ must make findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [plaintiff's] testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Absent affirmative evidence of malingering, an adverse credibility finding must be based on "clear and convincing reasons." Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008). Although the ALJ's interpretation of plaintiff's testimony may not be the only reasonable one, if it is supported by substantial evidence "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted).

In assessing a plaintiff's credibility, the ALJ may use "ordinary techniques" of credibility evaluation. Tonapetyan v. Halter, 242 F.3d

---

[2] Indeed, the court independently observes that Dr. Banger opined that plaintiff's mild mental limitations would "significantly" improve in less than six months with treatment. (TR 231.) An impairment cannot be considered disabling if, as is the case here, it can be controlled by treatment or medication. See 20 C.F.R. § 404.1530 (a) (providing that social security plaintiff must follow prescribed treatment if it can restore the ability to work); Warre v. Comm'r of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

11244, 1147-48 (9th Cir. 2001). Accordingly, factors that may weigh into the credibility evaluation include whether:
- the medical evidence supports the plaintiff's subjective claims;
- plaintiff has provided specific evidence regarding precipitating and aggravating factors (e.g., movement, activity, environmental conditions), and the nature, location, onset, duration, frequency, radiation, and intensity of alleged pain;
- the type, dosage, effectiveness, and adverse side-effects of any pain medication support claims of disabling pain; and,
- plaintiff has sought or is undergoing treatment, other than medication, for pain relief, and the extent of the treatment sought.

See Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Evidence of conservative medical treatment is a legally sufficient reason to discount a plaintiff's testimony regarding the severity of an impairment, Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)(citation omitted), as is a conflict with the medical evidence, see Rollins v. Massanari, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)). Once plaintiff produces objective medical evidence of an underlying impairment, however, the Commissioner may not reject plaintiff's subjective complaints based *solely* on lack of objective medical evidence to fully corroborate the alleged severity of her complaints. Bunnell v. Sullivan, 947 F.2d 341, 345 (1991).

Here, the ALJ found declined to credit plaintiff's complaints of limitations beyond those provided for in the RFC for the following reasons:
- there is scant evidence of regular medical treatment;

- there is no evidence of objective tests that support plaintiff's claims, made after his initial application, of fibromyalgia and disabling overall pain;
- his allegations of pain are completely out of proportion with the record;
- the medical the findings of his extensive physical abilities contradict his claims of limiting symptoms and limited daily activities;
- plaintiff has not been hospitalized for his impairment;
- plaintiff has undergone only conservative maintenance treatment and not significant active care;
- his medication has not been increased, which would indicate an uncontrolled condition;
- plaintiff has not described side effects from medication that would prevent him from substantial gainful activity.

(TR 11-13.)

In sum, while plaintiff is correct that the ALJ may not simply reject his statements solely on the basis that the degree of limitation he alleges is not corroborated by objective medical evidence, here the ALJ did not make such a finding. Here, the ALJ found plaintiff's subjective statements were effectively contradicted by the record in myriad ways. (See Id.) The court has reviewed the record, and finds this conclusion is supported by substantial evidence and is a legally sufficient reasons for the ALJ to decline to credit plaintiff's subjective statements in their entirety. See Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d at 1162. Accordingly, there is no material legal error here.

## CONCLUSION

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: 12/11/09

CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Malcolm D. Richardson<br>(Claimant) | Supplemental Security Income |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On March 31, 2006, the claimant protectively filed an application for supplemental security income, alleging disability beginning August 1, 2005. The claim was denied initially on June 15, 2006, and upon reconsideration on February 21, 2007. Thereafter, the claimant filed a written request for hearing on March 16, 2007 (20 CFR 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on June 3, 2008, in Orange, CA. Also appearing and testifying were Sami A. Nafoosi, an impartial medical expert and Alan L Ey, an impartial vocational expert. Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative.

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d).

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since March 31, 2006, the date the application was filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

7

See Next Page


EXHIBIT

Malcolm D. Richardson ▮ Page 2 of 9

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the

**8**

See Next Page

Malcolm D. Richardson                                                Page 3 of 9

claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.  The claimant has not engaged in substantial gainful activity since March 31, 2006, the application date (20 CFR 416.971 *et seq.*).**

**2.  The claimant has the following severe impairment: hypertension (20 CFR 416.921 *et seq.*).**

The claimant has a history of diagnosis of hypertension, fibromyalgia, and seizure disorder. (Exhibit 1F, 4F, and 9F).

At the request of the California Department of Social Services, the claimant was seen by Paul Bouz, M.D., for a clinical orthopedic consultive examination. Dr. Bouz reported on May 31, 2006, that the claimant reported that he suffered a worker's compensation injury in 1990 when he fell off a hydraulic mobile stand and injured his neck. He had been diagnosed with disc disease at the C5, C6, and C7 and received conservative treatment for a while. The claimant also reported seizures as a result of his injury and fibromyalgia, as well as pain in multiple joints. He complained of pain all over his body and that there was no part of his body that did not hurt. Examination revealed tenderness of the cervical and lumbar spine process with limited range of motion. He had tenderness throughout examination of the body. The claimant was diagnosed with possible fibromyalgia. (Exhibit 2F).

Ernest A. Bagner, III, M.D., reported on February 7, 2007, that the claimant was seen at the request of the California Department of Social Services for a clinical psychiatric consultive examination. The claimant complained that he was unable to perform activities of daily living and suicidal and homicidal ideation in the past. After examination, the claimant was diagnosed with depressive disorder not otherwise specified Global Assessment of Functioning ("GAF") of 73 indicating that if symptoms were present, they were transient and expectable reactions to

**9**

See Next Page

psychosocial stressors or produced no more than a slight impairment in social, occupational, or school functioning. (Exhibit 5F).

The Medical Expert, Sami Nafoosi, M.D., Board Certified in internal medicine, testified that he had reviewed the entire medical file as outlined above. He gave a detailed and longitudinal summary of the claimant's medical history noting that he had hypertension. Based on these records, it was his expert medical opinion that the claimant's allegations of chronic pain syndrome, fibromyalgia, and petit mal seizure disorder were not medically determinable and that his depression was not severe and that he had not required any hospitalization or physician's care for it. Dr. Nafoosi found that the claimant should not drive and not work at heights or around heavy machinery. The undersigned concurs with the Medical Expert's opinion and so finds.

The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.

In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant has mild limitation. Dr. Bagner reported on February 7, 2007, that the claimant is able to dress and bathe himself, watch television, manage money, and travel by car. (Exhibit 5F page 2).

The next functional area is social functioning. In this area, the claimant has no limitation. Dr. Bagner reported on February 7, 2007, that the claimant reported that he lived with his family and that his relationship with friends was okay. (Exhibit 5F page 2).

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. His cognitive ability and memory are intact and the medical reports indicate that he functions at a higher level that would allow him to do basic work activity. The undersigned notes that the claimant went into great detail answering his disability report. This is indicative of an ability to maintain an acceptable level of concentration to perform simple and detailed tasks.

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 416.920a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing

**10**

Malcolm D. Richardson ███████                                   Page 5 of 9

various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).**

The record does not report the existence of any functional limitations and or diagnostic test results, which would suggest that the impairments meet or equal the criteria of any specific listing. In addition, no treating or examining physician has reported findings, which either meet or are equivalent in severity to the criteria of any listed impairment, nor are such findings indicated or suggested by the medical evidence of record.

**4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: must avoid exposure to heights, heavy machinery, and driving automotive equipment. He can never climb ladders or scaffolding.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the hearing, the claimant complained of having pain all over his body, used a cane for ambulation, had extreme pain on certain days, dizziness, had grand mal seizures in 2006, and had pain in his neck on the way to the ODAR office such that he wanted to lie down in the back seat. He last worked in 1991 when he was injured on the job by a fall. His worker's compensation

**11**

Malcolm D. Richardson ███████                                    Page 6 of 9

claim was settled in 1994. He stated that he had seizures twice a day and that his medication sometimes controlled his seizures.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged disabling impairments, the record fails to document any objective clinical findings establishing that the claimant was not able to perform work in light of the reports of the treating and examining practitioners and the findings made on examination.

Dr. Bouz reported on May 31, 2006, that the claimant could walk on his tiptoes and heels and had a full range of motion of his upper and lower extremities. (Exhibit 2F). These findings are indicative that the claimant's complaints are not fully substantiated by the objective medical conclusions and his symptoms may not have been as limiting as the claimant has alleged in connection with this application.

The record fails to document that the claimant has been hospitalized for his impairment or show that the claimant has received significant active care other than for conservative maintenance. In fact, there is scant evidence in the record of regular medical treatment. Although the claimant has been diagnosed with fibromyalgia, the record does not contain significant evidence in the form of clinical testing, analysis and consistent medical treatment, as required by SSR 99-2p, that his condition is as disabling as the claimant alleges regarding his vague complaints of stiffness, pain and fatigue. Dr. Nafoosi found that the claimant did not have medically determinable fibromyalgia or chronic pain disorder and that there was no evidence of objective neurological testing regarding his complaints of seizure disorder. There have been no significant increase or changes in prescribed medication reflective of an uncontrolled condition, nor did the claimant describe side affects from his medication that would prevent him from substantial gainful activity.

The undersigned has taken into consideration the nature, location, onset, duration, frequency, radiation, and intensity of the claimant's pain, as well as precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of any pain medication; other treatment, other than medication, for relief of pain; functional restrictions; and the claimant's daily activities, and finds that his allegations of disabling pain are completely out of proportion with the record.

Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other

**12**

See Next Page

Malcolm D. Richardson ████ Page 7 of 9

factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

As for the opinion evidence, Assas Weinberg, M.D., reported on January 31, 2008, that the claimant had been unable to work for the previous twelve months and was totally disabled and would remain unemployable for the next twelve months. (Exhibit 9F page 1). A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence and consistent with otherwise substantial evidence of record, entitled to controlling weight (Social Security Ruling 96-2p). However, statements that a claimant is 'disabled', 'unable to work' can or cannot perform a past job, meets a listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein and in the *Dictionary of Occupational Titles*. Such issues are reserved to the Commissioner. (20 CFR 40d4.1527(d)(2) and Social Security Ruling 96-5p). Furthermore, the record fails support the doctor's opinion that the claimant is incapable of all work.

Dr. Bouz reported on May 31, 2006, that the claimant is able to lift or carry one hundred pounds occasionally and fifty pounds frequently and stand and walk for six hours in an eight hour day. (Exhibit 2F page 11).

Dr. Bagner reported on February 7, 2007, that the claimant had a GAF of 73 and had no limitations in interacting with supervisors, peers, or the public; had mild limitation in maintaining concentration and attention and completing simple and complex tasks; and had a mild to moderate limitation in handling normal work stresses. (Exhibit 5F pages 3-4).

Pursuant to 20 CFR § 404.1527, the undersigned assigns significant weight to these opinions, as they are well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations. Moreover, the opinions are not inconsistent with other substantial evidence of record. In addition, these physicians are examining sources that are familiar with Social Security Rules and Regulations and legal standards set forth therein and best able to provide a superior analysis of the claimant's impairments and resulting limitations.

A *Physical Residual Functional Capacity Assessment* dated June 15, 2006 by F. Kalmar, M.D., a State medical consultant, found that the objective medical evidence supported a finding that the claimant could perform a significant range of heavy work. The claimant was found to be only occasionally able to climb stairs and ramps, and occasionally balance, as well as frequently stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds. He was found to need to avoid even moderate exposure to extreme cold and heat, humidity, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, etc., and hazards (machinery, heights, etc.). (Exhibit 3F).

A *Psychiatric Review Technique* dated February 16, 2007, by N.S. Haroun, M.D., a State psychiatric consultant, found that the objective medical evidence supported a finding that the claimant had medically determinable depressive disorder that was not severe. The claimant was

**13**

Malcolm D. Richardson ▬▬▬ Page 8 of 9

found to be mildly limited in activities of daily living, no difficulties maintaining social functioning and have mild difficulties in maintaining concentration, persistence or pace, and have no episodes of decompensation. The claimant was not found to have a history of chronic organic mental disorder. (Exhibit 6F).

The undersigned has assigned significant weight to the state agency medical consultants' opinions with regard to the claimant's physical and mental limitations pursuant to 20 CFR § 404.1527 and SSR 96-6p because they were based upon a through review of the evidence and familiarity with Social Security Rules and Regulations and legal standards set forth therein. They are well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations. Moreover, their opinions are not inconsistent with other substantial evidence of record.

**5. The claimant is unable to perform any past relevant work (20 CFR 416.965).**

The claimant has past relevant work as an airframe and power plant mechanic. The vocational expert found that the claimant was not able to perform his past relevant work. Accordingly, the claimant is unable to perform past relevant work.

**6. The claimant was born on June 9, 1957 and was 48 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).**

**7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

**8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the

**14**

Malcolm D. Richardson ███ Page 9 of 9

claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as dining room attendant, food service worker in a hospital, and hand packager

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**10. The claimant has not been under a disability, as defined in the Social Security Act, since March 31, 2006, the date the application was filed (20 CFR 416.920(g)).**

### DECISION

Based on the application for supplemental security income protectively filed on March 31, 2006, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Helen E. Hesse*
_____
Helen E. Hesse
Administrative Law Judge

December 17, 2008
_____
Date

**15**